**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**WILLIE R. SCOTT, 13-B-3682,**

                Petitioner,

  -vs-                              No. 17-CV-0049(LJV)(HKS)
                                  Report and Recommendation

**SUSAN KICKBUSH, Superintendent**
**of Gowanda Correctional Facility,**

                Respondent.
_____

## REPORT AND RECOMMENDATION

This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions.  Dkt. #8.

*Pro se* petitioner Willie Scott ("Petitioner"), an inmate of the New York State Department of Corrections and Community Supervision, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his conviction in Niagara County Court of attempted assault in the first degree (N.Y. Penal L. §§ 110.00, 120.10 (1)).  Dkt. #1.

The factual summary that follows derives from the parties' representations contained in the following submissions: Petition dated January 4, 2017 (Dkt. #1); Respondent's Memorandum of Law in Opposition (Dkt. No. 5-1); the State Court

1

Records (Dkt. #6, 6-1, "S.R") and the Transcripts of the County Court Proceedings (Dkt. #6-2).[1]

## Factual Background and Procedural History

On November 27, 2012, Sharonda Platt ("Platt") and Timothy Ellison ("Ellison") drove to the Hometown Market in Niagara Falls, New York, with Platt's two-year-old daughter. Platt left her daughter with Ellison in the car. As soon as Platt entered the store, she heard gunshots and ran back to the car to find that her child had been shot in the face. The child was treated at the hospital and survived her injuries.

Petitioner was identified by Ellison as the shooter and was charged with first-degree assault (N.Y. Penal L. § 120.10(1)), second-degree criminal weapon possession (N.Y. Penal L. § 265.03(3)), and first-degree criminal weapon possession (N.Y. Penal L. § 265.09(1)(b)).

Petitioner retained Angelo Musitano, Esq. ("Musitano"), to represent him. The People moved the Niagara County Court to disqualify Musitano because he had represented Platt in several criminal matters, and the prosecution expected to call Platt as a witness in Petitioner's case. Petitioner opposed the motion, stating that he was willing to waive the potential conflict of interest. The county court granted the People's motion and disqualified Musitano as Petitioner's counsel.

---

[1] The transcripts consist of a Motion Hearing dated February 21, 2013 ("M.H."), the Plea Proceeding ("P."), and Sentencing ("S.").

2

Petitioner retained new counsel and entered into a plea agreement by which Petitioner would plead guilty to attempted assault in the first degree and admit his status as a second felony offender.[2] The People agreed to consent to a term of incarceration of no more than ten years, and Petitioner would waive his right to appeal all issues except for his claim concerning the Musitano's disqualification based on a conflict of interest. P. 2.

Petitioner ultimately pleaded guilty to attempted first-degree assault and was sentenced, as a second felony offender, to a determinate prison term of ten years, plus five years of post-release supervision. P. 9-14, S. 7.

Before perfecting his appeal, Petitioner brought a *pro se* motion to vacate the judgment pursuant to N.Y. Crim. Proc. L. § 440.10, in which he claimed, *inter alia*, that the trial court improperly disqualified his retained counsel. S.R. 1-23. The county court denied Petitioner's motion in its entirety, finding "no merit" in his assertion that it erred in disqualifying Musitano, and, in any event, the claim was fully litigated on the trial record and was preserved for normal appellate review. S.R. 27-28.

Petitioner then raised this claim on direct appeal to the Appellate Division, Fourth Department, which held: "[w]e . . . reject the contention of defendant in his main and *pro se* supplemental briefs that the court abused its discretion in granting the People's motion to disqualify defense counsel based on his prior representation of the

---

[2] As part of the plea agreement, the People agreed not to seek persistent felony offender status. S.R. 16.

3

victim's mother, a potential prosecution witness." *People v. Scott*, 137 A.D.3d 1616 (4th Dept. 2016) (citing *People v. Watson*, 26 N.Y.3d 620, 621 (2016), in turn citing *Wheat vs. United States*, 486 U.S. 153 (1988)). Leave to appeal to the New York Court of Appeals was denied. *People v. Scott*, 27 N.Y.3d 1139 (2016).

Petitioner now brings this challenge before the Court by way of the instant Petition. Dkt. #1. For the reasons that follow, the Court finds that Petitioner's claims should be denied and the Petition be dismissed.

## Discussion

### I. General Legal Principles

#### A. Standard of Review

A district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  Errors of state law are thus not subject to federal habeas review.  *E.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Federal habeas review of state court decisions is governed by the standard set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq.*, which provides that "[a]n application for a writ of

habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2).

A state court decision is "contrary to" established federal law if the state court arrives at a conclusion on a question of law that is opposite to that reached by the Supreme Court, or if the state court adjudicates essentially the same facts as a prior Supreme Court case but reaches an opposite result. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (citations omitted).  A state court decision is an "unreasonable application" of established federal law if: (1) the state court correctly identifies the relevant legal principle but unreasonably applies it to a set of facts; (2) the state court unreasonably extends an existing principle to a new context where it should not apply; or (3) the state court refuses to extend an existing principle to a context where it should be extended.  *Williams*, 529 U.S. at 407.  Any factual determination made by the state court must be presumed correct unless the habeas petitioner can rebut that presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

## II.     Petitioner's Claim for Relief

### A.     Sixth Amendment Right to Counsel of Choice

In his application, Petitioner argues that he was denied his right to counsel of choice when the trial court disqualified his retained counsel (Musitano), because he had previously represented the victim's mother (Platt), a potential prosecution witness. Dkt. #1.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. However, "the right to choose one's own counsel is not absolute." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (citing *Wheat*, 486 U.S. at 159; *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir. 1993)). Rather, "[t]he Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing." *Id.* (citing *Wheat*, 486 U.S. at 159; *Locascio*, 6 F.3d at 931). Because a defendant's right to counsel of his or her choice is not absolute, a trial court "may require" a defendant to proceed to trial with counsel not of defendant's choosing, although it "may not compel" defendant to proceed with an attorney who is "incompetent." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997); *see also United States v. Mills*, 895 F.2d 897, 904 (2d Cir. 1990) (an indigent defendant is not entitled to counsel of his choice; rather, he is entitled only to effective representation).

"Although a trial court 'must recognize a presumption in favor of [a defendant's] counsel of choice, . . . that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.'" *Carncross v. Poole*, 448 Fed. Appx. 150, 152 (2d Cir. 2011) (quoting *Wheat*, 486 U.S. at 164). "Moreover, trial courts 'must be allowed substantial latitude' when determining whether to disqualify counsel due to the existence of a conflict, including by 'refusing waivers of conflicts.'" *Jean-Baptiste v. Artus*, No. 09CIV5920, 2012 WL 12906287, at *8 (S.D.N.Y. June 19, 2012), *report and recommendation adopted*, 2016 WL 7118280 (S.D.N.Y. Dec. 6, 2016) (quoting *Wheat*, 486 U.S. at 163).

The record shows that on the date of Petitioner's arraignment, the People moved to disqualify Musitano on the basis that he had represented Platt in a number of criminal matters. Platt, the victim's mother, was "one of the People's primary witnesses," who, upon belief, was "not waiving the privileged nature of her communications with [Musitano]." S.R. 67. A conflict of interest would arise because Musitano would be precluded from cross-examining Platt about her prior criminal cases that involved information that Musitano learned through his prior representation of her. S.R. 67-40. Petitioner opposed the motion, conceding Musitano's prior representation, but averring that counsel "did not receive any information from Platt that would require any continuing obligation of confidentiality to her. All the charges contained in the accusatory instruments and any supporting depositions are public documents. They can be obtained by anyone." S.R. 72. Additionally, counsel argued that Platt was not a significant prosecution witness, as she was not an eyewitness to the shooting. S.R. 77.

7

On February 21, 2013, the parties appeared before the trial court. Musitano reiterated his arguments and stated that Petitioner was willing to waive the conflict of interest. The trial court specifically inquired as to the potential cross-examination of Platt:

> The Court: [W]hen you say that you spoke to Mr. Scott last evening in detail and that he would be willing to waive a conflict, you're saying he would be willing to waive any objection to having you represent him. You're not specifically saying that he would be willing to waive your forgoing a full cross-examination of Miss Platt including her prior criminal record?
>
> Musitano: Well, Judge, I think that's something you would have to discuss with him.

M.H. 13-14.

On March 6, 2013, the trial court issued a written decision granting the motion to disqualify Musitano as Petitioner's counsel.

> The Court has undertaken a review of the Grand Jury Minutes and notes that Sharonda Platt was a witness before the Grand Jury and is expected to testify at trial.
>
> Sharonda Platt is the mother of the victim in this case, [J.M.], who was two years old at the time of the shooting and is now age three. Obviously, a child of that age did not testify at the Grand Jury. Instead, her mother testified about the circumstances of the shooting on November 27, 2012, including where the child went, where the child was positioned in the automobile, the sound of the shots, the condition of the child after being shot, the summoning of the police and medical care and the course of her subsequent treatment.
>
> It appears from the Grand Jury testimony that Ms. Platt is an important witness. Indeed the trial jury might think it strange if she did not testify at trial.

> …
>
> Pointedly, neither Musitano nor Mr. Scott has agreed to forego the topics of Ms. Platt's prior charges and convictions as impeachment materials of her at this trial. That point was specifically rejected at oral argument by Mr. Musitano.

S.R. 80-81. The trial court also recited the new state rules of professional conduct which "require[] that a lawyer who has formerly represented a client shall not represent another in the same or substantially similar matter" in which that person's interests are materially adverse to the interests of the former client "unless the former client gives their consent in writing." S.R. 82. Because Platt's criminal history would be an issue at Petitioner's trial, the trial court found that this case was a substantially similar matter to the prior representation of Platt, and Musitano was bound by his obligation to his former client. S.R. 82-83. The conflict related to both Petitioner and Platt. Thus, even if Petitioner were to waive the issue, nothing in the record indicates that Platt would be willing to waive the conflict. S.R. 83. The trial court concluded that Musitano's representation of Petitioner was impaired by the duty of loyalty he owed to his former client, and therefore disqualified him from representing petitioner at trial. S.R. 84.

Here, the Appellate Division reasonably applied *Wheat* in rejecting Petitioner's choice-of-counsel claim on the merits. It is undisputed that Musitano had previously represented Platt on several criminal matters before assuming representation in Petitioner's case. Counsel acknowledged as much in his papers and during the motion hearing. It is further undisputed that the prosecution expected to call Platt as a trial witness. During the motion hearing, Musitano did not answer whether Petitioner

9

would be willing to forego the topic of Platt's criminal history as impeachment material, but did indicate that he should be permitted to question Platt about her criminal past, insofar as "her record is a public document." M.H. 12. Impeaching Platt's testimony would have clearly been a part of Petitioner's defense strategy. If the trial court had permitted counsel to remain, Petitioner would have been denied this aspect of his defense because of Musitano's continuing duty of loyalty to Platt. *See* S.R. 82 (citing N.Y. Rules of Professional Conduct 1.9). Without the ability to cross-examine an important prosecution witness, Petitioner would have been denied effective representation and a fair trial. Accordingly, the trial court providently exercised its discretion in disqualifying Musitano. *See Jean-Baptiste*, 2012 WL 12906287, at *8 ("Accordingly, even if Petitioner had a right to counsel of choice, the Court would find that the trial court acted within its discretion in disqualifying Weiss as Petitioner's counsel after determining that Weiss's prior representation of Grant would potentially hamper Weiss's ability to effectively cross-examine his former client at Petitioner's trial."); *see also Camcross*, 448 Fed. Appx. at 152 (affirming denial of habeas petition and noting that petitioner's claim that trial court's disqualification of defense counsel violated his right to counsel of choice was without merit where "[i]nitial defense counsel represented two grand jury witnesses who provided testimony inculpating" petitioner and "[t]here was a substantial risk" that they would be called at trial); *Kyle v. Senkowski*, No. 09-CV-00790, 2011 WL 2938426, at *3 (W.D.N.Y. July 19, 2011) (rejecting choice-of-counsel claim where potential conflict of interest arose from prosecution's intent to call a witness who had been previously represented by petitioner's attorney on a criminal charge).

For these reasons, the Appellate Division reasonably applied *Wheat* in upholding the trial court's decision to disqualify defense counsel. The Court therefore respectfully recommends dismissal of the Petition.

## Conclusion

Based on the foregoing, it is recommended that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and the Petition be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. Proc. 72(b) and Local Rule 72(b).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Report and Recommendation to Petitioner and Respondent.

**ALL OF THIS IS SO ORDERED.**

DATED:   Buffalo, New York
         February 28, 2020

*S/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**

12